UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR CAMPOS,

                  Plaintiff,

-v.-

LENMAR RESTAURANT INC. and
WILLIAM BRUCKMAN,

                  Defendants.

18 Civ. 12359 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

    Plaintiff brings this action for violations of the Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (the "FLSA"), *codified as amended at* 29 U.S.C. §§ 201-219, and the New York Labor Law, Consol. Laws 1909, ch. 31 (the "NYLL") against Defendants Lenmar Restaurant Inc. (doing business as "Pietro's") and William Bruckman (collectively, "Defendants"). Plaintiff alleges, *inter alia*, that Defendants failed to pay regular and overtime wages for all hours worked; failed to pay minimum wage under the NYLL; failed to pay spread of hours compensation under the NYLL; and failed to provide proper wage notices and statements under the NYLL.

    Plaintiff now moves for conditional certification under § 216(b) of the FLSA and for authorization to send notice to prospective collective action members. For the reasons set forth in this Opinion, the motion for conditional certification is granted, but solely for a collective composed of current and former bussers and servers.

# BACKGROUND[1]

## A. Factual Background[2]

Plaintiff alleges that from approximately April 2017 to November 2018, he was employed by Defendants as a busser at Pietro's, a restaurant located in Manhattan. (Compl. ¶ 22; Pl. Decl. ¶ 1). Plaintiff alleges that "[a]t all relevant times, Defendants ... engaged in a policy and practice of failing to pay Plaintiff ... for all hours worked due to time shaving." (Compl. ¶ 46). Further, Plaintiff alleges that Defendants "engaged in a policy and practice of failing to pay the minimum wage in the lawful amount," because "Defendants were not entitled to claim [a] tip credit allowance." (*Id.* at ¶ 47). In addition to the above, Plaintiff alleges that Defendants "fail[ed]" to pay ... the spread-of-hours premium for workdays exceeding ten hours" (*id.* at ¶ 57); "failed to provide proper wage and hour notices" (*id.* at ¶ 59); and "failed to provide proper wage statements" (*id.* at ¶ 60).

---

[1] The facts in this Opinion are drawn from Plaintiff's Complaint ("Compl." (Dkt. #1)), and Plaintiff's declaration in support of the pending motion ("Pl. Decl." (Dkt. #24)). For ease of reference, the Court refers to Plaintiff's opening brief as "Pl. Br." (Dkt. #23); Defendants' opposition brief as "Def. Opp." (Dkt. #28); and Plaintiff's reply brief as "Pl. Reply" (Dkt. #29).

[2] Plaintiff bears the burden on a Section 216(b) motion. Accordingly, the Court focuses primarily on Plaintiff's account of the facts at this stage of the litigation. *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification). The Court "grant[s] the plaintiff the benefit of the doubt given the posture of this motion." *Williams* v. *Movage Inc.*, No. 17 Civ. 2628 (KPF), 2018 WL 1940435, at *1 n.2 (S.D.N.Y. Apr. 24, 2018) (quoting *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013)). By contrast, the Court does not consider the factual assertions contained in Defendants' opposition brief or declarations filed in support thereto. *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *3 (S.D.N.Y. Aug. 10, 2015) (quoting *Bhumithanarn* v. *22 Noodle Market Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015)).

Plaintiff claims that throughout his employment with Defendants, he regularly worked 63.5 hours per week: from 9:30 a.m. to 9:30 p.m., with a 30-minute lunch break, five days a week, and from 3:00 p.m. to 9:30 p.m., with a 30-minute lunch break, one day a week. (Compl. ¶ 23; Pl. Decl. ¶ 4). And yet, Plaintiff claims, he was not compensated for all the hours that he worked. (Pl. Decl. ¶ 6). Although Plaintiff was supposed to be given a full one-hour lunch break during his workdays, he "was regularly required to work after taking only 30-minutes of break time every day." (*Id.*). Despite this, "Defendants indiscriminately and automatically deducted [one] hour from my hours worked on each workday." (*Id.*). In addition, Plaintiff was required to start work at 9:30 a.m. five days a week, despite being told by Defendant William Bruckman that he would not be paid for any work prior to 10:00 a.m. (*Id.* at ¶ 9). Plaintiff alleges that these time-shaving and off-the-clock work policies caused him to be consistently underpaid every week. (*Id.* at ¶ 11). "The number of work hours reflected on [employees'] paystubs were always a round whole number, like 36.00 or 40.00, which was unrealistic and untrue, and significantly less than [the employees'] actual number of hours worked each week." (*Id.*). On top of all of this, Plaintiff "was never paid the spread-of-hours premium despite having workdays that exceeded ten hours on a regular basis." (*Id.* at ¶ 14).

Plaintiff claims that from the beginning of his employment to December 2017, he was paid at a base hourly rate of $7.50 per hour, and that from January 2018 until the end of his employment, he was paid at a base hourly rate of $8.65 per hour. Both of these rates reflect the discounted tip credit

3

minimum wage rates for their respective periods. (Pl. Decl. ¶ 2). However, Plaintiff alleges that he was required throughout his employment to spend more than half of his work time engaging in non-tip-related activities, "such as cleaning the refrigerator and kitchen; throwing out garbage; stocking inventory; cleaning the restaurant; assisting dishwashers ...; drying and polishing silverware; storing clean dishes; [and] assisting the barista with his work." (*Id.* at ¶ 13). Moreover, Plaintiff "did not receive proper notice regarding Defendants' tip credit deduction." (*Id.* at ¶ 12).

Plaintiff brings this action "on behalf of all non-exempt persons," which he defines to include "cooks, line-cooks, food preparers, dishwashers, porters, waiters, runners, bussers, and bartenders," and potentially others, who were employed at Pietro's during the last six years. (Compl. ¶ 11). In general, Plaintiff claims that each of these non-managerial employees, regardless of position, was subject to the same treatment as Plaintiff regarding wages and hours. (*See* Pl. Decl. ¶¶ 2, 4, 5, 7, 9, 12-16). Plaintiff alleges that he observed and spoke with 12 different workers, the bulk of whom were bussers and servers, but three of whom were kitchen staff. (*See id.* at ¶ 3). Plaintiff "regularly spoke" with servers and bussers such as Valerio Santo, Julio Quenca, and an individual known only as "Jordan," "who were very upset because they were only able to take a 30-minute meal break before returning to work, but Defendants always deducted the full 1-hour meal time from their wages." (*Id.* at ¶ 8). Plaintiff also describes telling Carlos Pina, a server, that Plaintiff was not being paid for all of his hours and was not receiving a spread-

4

of-hours premium. (*Id.* at ¶ 10). Pina allegedly responded "that he was well aware of Defendants' policies … because he too was never paid the full hourly wage." (*Id.*). Plaintiff alleges that Pina, Santo, and Quenca all told him, "[N]o one is paid the full pay at Pietro's." (*Id.*). Plaintiff and Pina often spoke about how they "work for free every day." (*Id.*). Plaintiff claims that on pay day, he "observed several of [his] co-workers talking about their paystubs, and frequently complaining that they were missing many hours on their paystubs and paycheck." (*Id.* at ¶ 11). "Many of the hourly employees … were extremely dissatisfied about the prevalence of unpaid labor but remained cautious about expressing their frustration because they feared that they would get fired and lose their jobs." (*Id.*).

**B.     Procedural Background**

Plaintiff filed his Complaint on December 31, 2018. (Dkt. #1). The case originally proceeded to mediation (Dkt. #10), but the mediation was unsuccessful (Dkt. #17). The Court held an initial pretrial conference on August 15, 2019. During that conference, Plaintiff indicated that he intended to file a motion for conditional certification under § 216(b) of the FLSA. Plaintiff filed his motion for conditional certification on August 30, 2019. (Dkt. #22). Defendants filed their opposition brief on September 27, 2019. (Dkt. #25). Plaintiff filed his reply on October 11, 2019. (Dkt. #29).

## DISCUSSION

### A. Applicable Law

#### 1. The FLSA Generally

The FLSA permits aggrieved employees to bring collective actions against their employers for unlawful employment practices. The statute authorizes suits "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness. *Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); Fed. R. Civ. P. 23(a). "Also unlike Rule 23, only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'" *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)). District courts may, in their discretion, "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted) (citing *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169 (1989)).

#### 2. Collective Certification Under § 216(b) of the FLSA

The Second Circuit has endorsed a two-step method to certify FLSA collective actions. *Myers*, 624 F.3d at 555. At the first step, courts consider

whether "to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* (internal quotation marks and citations omitted). At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* This second step "typically occurs after the completion of discovery[.]" *Bifulco* v. *Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). At the latter stage, the court may "decertify the class or divide it into subclasses, if appropriate." *McGlone* v. *Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Plaintiffs bear a low burden at the first step: They need only "make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015). Upon such a showing, plaintiffs may send notice to other potential plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "Because minimal evidence is available at this stage, this determination is made using a 'relatively lenient evidentiary standard.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Mentor* v. *Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). "However, certification is not automatic." *Taveras* v. *D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41

(S.D.N.Y. 2018). "Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations." *Id.*

At the first stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Winfield* v. *Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (quoting *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). Courts in this District have therefore held that a FLSA collective action may be conditionally certified based upon even a single plaintiff's affidavit. *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).

**B. Analysis**

    **1. Plaintiff Has Met His Burden to Conditionally Certify a Collective Action Involving Bussers and Servers**

Plaintiff seeks conditional certification[3] of a broad class of "all non-exempt employees" employed at Pietro's restaurant since December 31, 2012, including "cooks, line-cooks, food preparers, dishwashers, porters, servers, bussers, and bartenders." (*See* Pl. Br. 1, 4). Plaintiff has undoubtedly alleged facts specific enough to warrant conditional certification of bussers and servers. Plaintiff has alleged that he, as a busser, was subject to a specific policy of being forced to work hours that were not accounted for in his paycheck, causing him to be consistently underpaid throughout his

---

[3]     The Court notes that Plaintiff specifically seeks conditional certification of his FLSA claims regarding Defendants' time-shaving and off-the-clock work policies. (Pl. Br. 1 n.1). Plaintiff indicates that he will seek class certification of his state law claims at a later date. (*Id.*).

8

employment. (*See* Pl. Decl. ¶¶ 4, 6, 9). Plaintiff has also named other bussers and servers whom he observed or had conversations with about Defendants' practice of requiring employees to engage in unpaid work, whether it be not paying employees for work done prior to 10:00 a.m. or indiscriminately subtracting a one-hour lunch break from employees' pay. (*See id.* at ¶¶ 7-8, 10-11). Indeed, Plaintiff provides specific details of conversations he had with Santo, Quenca, and Jordan about not being able to take the entirety of their lunch break (*see id.* at ¶ 8), as well as conversations with Pina about Pina never being paid his full hourly wages (*see id.* at ¶ 10). This is more than enough to meet the lenient standard that controls at this stage. *See Islam* v. *LX Ave. Bagels, Inc.*, No. 18 Civ. 4895 (RA) (RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (granting conditional certification where plaintiffs "name[d] or otherwise identif[ied] specific employees that were subject to the same unlawful compensation policies" (internal quotation marks omitted)); *Iriarte* v. *Café 71, Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (granting same where plaintiff declared that "he ha[d] personal knowledge from his observations and his conversations with his coworkers that he and 'all other employees …' were victims of Defendant's practices").

Defendants contend, however, that Plaintiff's proposed class is overly broad. (*See* Def. Opp. 3-5). The Court agrees, although not for the reasons

9

Defendants raise in their briefing.[4] While Plaintiff has made his modest factual showing insofar as bussers and servers are concerned, he has not made sufficient allegations regarding other non-managerial employees at Pietro's. Plaintiff has identified by name and position three employees who were not bussers or servers, and has asserted "[b]ased on [his] personal observations and conversations" that all non-managerial employees "were subject to the same wage and hour policies." (Pl. Decl. ¶¶ 2-3). In contrast to bussers and servers, for whom Plaintiff can point to specific details from his own experience or from conversations with specifically named employees, Plaintiff is unable to provide any non-conclusory allegations about the conditions that other non-managerial employees experienced. Even under the low bar set by conditional certification, Plaintiff's allegations are insufficient to permit the inclusion of these other employees in the class because they do not provide a basis from which the Court can conclude that these employees were subject to a common policy. *See Ramos* v. *PJJK Restaurant Corp.*, No. 15 Civ. 5672 (PKC), 2016 WL 1106373, at *4 (S.D.N.Y. Mar. 10, 2016) (denying inclusion of "all hourly employees" where the plaintiffs merely identified names and positions of employees and asserted "[b]ased on … personal observations and

---

[4] Defendants raise largely factual disputes regarding the differences in job duties, responsibilities, hours, and means of payment between customer-facing staff, kitchen staff, and bartenders at Pietro's. (*See* Def. Opp. 4-5). However, on a motion for conditional certification, this Court will not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *See Bhumithanarn* v. *22 Noodle Market Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (quoting *Lynch* v. *United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). Therefore, Defendants' contentions are inappropriate at this stage of the litigation.

conversations" that those employees were subject to the same policies). Therefore, the Court will grant the collective action only insofar as bussers and servers are concerned.[5]

### 2. The Court Generally Approves the Proposed Notice and the Consent to Join Form, and Will Permit Certain Pre-Certification Discovery

Having decided that conditional certification is warranted for bussers and servers, the Court next turns to Plaintiff's proposed notice, consent to join form, and request for pre-certification discovery.

#### a. The Proposed Notice

Plaintiff seeks approval to send notice to the putative collective in this action. The proposed notice, in relevant part, states that the notice is meant "to advise you of your right to participate in this lawsuit under the FLSA." (Dkt. #23-1 at 1). It further states that "[t]he Court has not decided the merits of any claims or defenses asserted by any party to this lawsuit or whether any party is right or wrong." (*Id.*). The proposed notice also informs readers that "[i]t is your right to join or not to join this lawsuit." (*Id.*). As drafted, the proposed notice provides potential members with a 60-day opt-in period. (*Id.* at 2).

---

[5] Defendants also argue that Plaintiff is not an appropriate class representative because he allegedly made false statements and does not understand the distinctions between and among various employees at Pietro's. (*See* Def. Opp. 5). Insofar as this argument is not merely another attempt to raise factual disputes, § 216(b) does not require anything more of class representatives than that they are "similarly situated." 29 U.S.C. § 216(b). If Plaintiff eventually moves for class certification pursuant to Rule 23(a), Defendants may then raise concerns about Plaintiff's appropriateness as a class representative. *See* Fed. R. Civ. P. 23(a).

11

The Court is largely amenable to the proposed notice and to its translation into Spanish. *See Valerio* v. *RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) ("Generally, courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." (internal quotation marks omitted)). However, the Court will approve the proposed notice subject to three revisions. *First*, the proposed notice must reflect the Court's decision limiting the conditionally certified class to bussers and servers. *Second*, in order to ensure the accuracy of the notice and its comprehensibility by potential plaintiffs, the Court directs that the word "FLSA" be inserted before the word "claims" in the sentence in the last paragraph of the first page of the proposed notice, reading, "If you believe that you may be able to assert any of the claims described above, you have the right to participate in this lawsuit." (*See* Dkt. #23-1, at 1). Thus, the sentence should read, "If you believe that you may be able to assert any of the *FLSA* claims described above, you have the right to participate in this lawsuit." *Third*, the proposed class of potential plaintiffs should be limited to those who have been employed as bussers or servers by Defendants at any time in the three-year period prior to the filing of the Complaint,[6] not a six-year period as Plaintiff

---

[6] Although neither Defendants nor Plaintiff have raised the subject, the Court notes that a possibility exists that equitable tolling issues may arise in this case. However, "courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Trinidad* v. *Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 n.14 (S.D.N.Y. 2013) (internal quotation marks omitted). Should such issues arise at a later stage in this litigation, the Court will address them then.

requests. (*See id.*). "The FLSA has a two-year limitations period for non-willful violations and a three-year limitations period for willful violations." *Ramos*, 2016 WL 1106373, at *5; 29 U.S.C. § 255(a). The NYLL, on the other hand, has a six-year limitations periods. *Islam*, 2019 WL 5198667, at *8; N.Y. Labor Law § 198(3). In support of a six-year period, Plaintiff simply argues that allowing such a duration is "the common practice in the Second Circuit" when plaintiffs assert both FLSA and NYLL claims. (*See* Pl. Reply 9). While the Court recognizes that some courts in this Circuit have indeed granted six-year notice periods, *see, e.g., Fonseca* v. *Dircksen & Talleyrand, Inc.*, No. 13 Civ. 5124 (AT), 2014 WL 1487279, at *6 (S.D.N.Y. Apr. 11, 2014), there is equal authority supporting a three-year period where the plaintiff is only seeking conditional certification of his FLSA claims, *see, e.g., Islam*, 2019 WL 5198667, at *8 (denying a six-year period because it "would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims"); *Iriarte*, 2015 WL 8900875, at *5-6 (denying a six-year period for the same reason); *Lujan* v. *Cabana Mgmt., Inc.*, No. 10 Civ. 755 (ILG), 2011 WL 317984, at *9 (denying a six-year period for the same reason). The Court is persuaded that providing notices to plaintiffs who may not have a claim under the FLSA would serve only to confuse employees, rather than "promote judicial efficiency" as Plaintiff claims. (*See* Pl. Reply 10). Thus, the Court deems a three-year period more than appropriate for Plaintiff's purposes.

### b. The Consent to Join Form

Plaintiff also seeks approval to send a "Consent to Become A Party Under the FLSA" Form to potential plaintiffs. (Dkt. #23-1 at 3). Potential plaintiffs are given the ability to provide their names, addresses, contact information, and social security numbers to Plaintiff's counsel if they wish to join the lawsuit and to designate Plaintiff's counsel as their own representative. As with the proposed notice, the Court will only approve the consent to join form if it is changed to reflect the approved putative class and the applicable three-year notice period. Additionally, the Court will not approve the consent to join form if it asks potential plaintiffs to provide their social security numbers. The Court will address this issue further below.

### c. Pre-Certification Discovery

Finally, the Court considers Plaintiff's request for pre-certification discovery. Specifically, Plaintiff requests, within ten days of the issuance of this Opinion and Order, the production in Excel format of names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers of all employees within the putative class. (Pl. Br. 1). Plaintiff also seeks the social security numbers of the relevant employees, in the event that mailings are returned as undeliverable and Plaintiff's counsel must "perform a skip trace to obtain a valid address." (*Id.* at 11).

Defendants have raised no objections to Plaintiff's discovery request. Nevertheless, the Court takes issue with both the time requested for production

and the request for social security numbers.  As to the former issue, although there is some precedent for such a short time-frame, *see, e.g., Laroque* v. *Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 357 (E.D.N.Y. 2008), the more common amount of time given is 14 days, *see, e.g., Valerio*, 314 F.R.D. at 76; *Sharma* v. *Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014); *Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 327 (E.D.N.Y. 2016).  As to the latter issue, the Court recognizes that in some instances, other courts have permitted the plaintiff to request the social security numbers of putative class members. *See Patton* v. *Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005). However, the Court believes the greater weight of authority goes against authorizing the collection of such sensitive information "in the first instance and without a showing that the information is necessary."  *See Zaldivar*, 166 F. Supp. 3d at 326-27 (collecting cases denying the production of social security numbers).  If Plaintiff is unable to contact some potential opt-in plaintiffs with the other information it receives from Defendants, Plaintiff may renew his application for social security numbers.  Otherwise, the Court does not believe the situation necessitates such a step at this time.

Having addressed those two concerns, and having reviewed the parties' submissions, the Court finds all of the requested information, excepting the social security numbers, appropriate.  Plaintiff's request for pre-certification discovery, in accordance with this Opinion, is granted.

**CONCLUSION**

For the reasons set forth above, Plaintiff's motion is GRANTED, but solely as to bussers and servers employed at Pietro's on or after December 31, 2015. Plaintiff is hereby ORDERED to revise the Proposed Notice[7] and Consent to Join form within seven days of the date of this Order. Furthermore, Plaintiff is ORDERED to provide a proposed Publication Order to the Court encompassing Plaintiff's requests, consistent with this Opinion, within seven days of the date of this Order.

Defendants are ORDERED to provide Plaintiff, in Excel format, with the names, titles, compensation rates, dates of employment, last knowing mailing addresses, email address, and all known telephone numbers of all employees within the putative class within 14 days of the date of this Order.

Finally, Plaintiff is ORDERED to mail the final Notice and Consent to Join form no later than 30 days after Defendants produce the names and relevant information for potential collective members.

The Clerk of Court is directed to terminate the motion at Docket Entry 22.

---

[7] Plaintiff has requested that the Court order the parties to meet and confer regarding the Proposed Notice. Insofar as the parties wish to meet and confer and amicably negotiate a Proposed Notice in accordance with this Opinion, the parties should feel free to do so. However, based on the parties' submissions, the Court believes that this Opinion resolves any disputes regarding the Proposed Notice.

SO ORDERED.

Dated: November 21, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge